41898. CARTER et al. v. BANKS.
(330 SE2d 866)

GREGORY, Justice.

Barbara Banks sued Leon Carter and Joseph Pierce for damages allegedly resulting from a collision between Carter's automobile operated by Pierce, and her parked and unoccupied automobile. The trial court granted summary judgment to Carter and Pierce on the theory

---

any claim for damages must be brought by Banks' insurer, Nationwide Mutual Fire Insurance Company (Nationwide), which had compensated Banks for her loss under an automobile insurance policy. The Court of Appeals reversed, *Banks v. Carter*, 173 Ga. App. 93 (325 SE2d 453) (1984), holding there had been no assignment of the claim from Banks to Nationwide and there existed no subrogation rights in Nationwide because Ga. Laws 1978, p. 2075, an amendment to what is presently OCGA § 33-34-3 (d) (1), abolished those rights. We granted certiorari and now reverse.

The issue we face is whether Ga. Laws 1978, p. 2075, abolished an insurer's right to be subrogated to its insured's claim against a third party tortfeasor after paying benefits for damage to the insured's motor vehicle under the collision coverage of an automobile insurance policy.

Banks filed her complaint in the State Court of Fulton County on October 5, 1982. She alleged that Pierce was operating Carter's automobile on June 3, 1982 when he negligently lost control and collided with Banks' vehicle, totally destroying it. She alleged Pierce was under the influence of alcohol and that Carter knew this so that Carter was liable for the damages resulting from Pierce's conduct under the theory of negligent entrustment. She sought $5,000 general damages to her automobile and $10,000 punitive damages. Pierce and Carter answered, denying negligence and alleging Banks had received payment for her claim and thereby released or waived it. They also alleged there was a failure to join an indispensible party. In the course of discovery it was disclosed that Nationwide was the alleged indispensible party and that it had paid Banks $3,660 under the collision coverage of Banks' insurance policy as the actual value of the car, plus loss of use, less $100 deductible.[1]

---

[1] The Nationwide policy issued to Banks contained the following:
"COLLISION COVERAGE Under this coverage, we will pay for direct and accidental loss of, or damage to, your auto and its equipment caused by collision or upset. This coverage includes broken glass. For each occurrence, we will pay for the loss or damage minus your declared deductible amount. However, we will not subtract the deductible amount:
1. if your auto collides with another motor vehicle insured by us, or
2. for broken glass if you have full (no deductible) Comprehensive coverage in force.
Also, if your auto has loss or damage under this coverage:
1. we will pay for resulting loss of clothing and luggage belonging to you or any relatives living in your household. Maximum payment is $200 in total for each occurrence.
2. we will repay you for the cost of transportation from where your auto was disabled to your intended destination. Maximum payment is $10 for each occurrence."
The declared deductible was $100. The policy provided "basic personal injury protection," the minimum required coverages of OCGA § 33-34-4. It also contained $5,000 "additional personal injury protection," the optional coverages of OCGA § 33-34-5 (a) (1) and (2) but not the coverage for damage to the insured motor vehicle of OCGA § 33-34-5 (a) (3).
There was also a provision for subrogation:
"5. SUBROGATION

The defendants, Pierce and Carter, filed a motion for summary judgment on the ground Banks' loss had been paid by Nationwide and Banks had assigned her rights against Pierce and Carter to Nationwide.[2] This motion was granted and the appeal followed.

1. Before there was "no-fault" there was "collision" coverage. That is, collision insurance in the automobile insurance industry existed as a specific form of general property insurance long before the enactment of the Georgia Motor Vehicle Accident Reparations Act, Ga. Laws, 1974, p. 113 (No-fault). See generally as to collision coverage, 10A Couch on Insurance 2d, § 42.203 et seq., pp. 322-362. Payment by an insurer to its insured under collision coverage gave rise to a right of subrogation in the insurer to the claim of the insured against a third party tortfeasor liable for the damage to the insured's vehicle. *Vigilant Ins. Co. v. Bowman*, 128 Ga. App. 872 (198 SE2d 346) (1973). The right of subrogation can arise from one of three sources. (1) It is an equitable principle founded on the proposition that an insured ought not to collect damages for his loss from both his insurer and the tortfeasor, a double recovery. *Allstate Ins. Co. v. Austin*, 120 Ga. App. 430, 433 (2) (170 SE2d 840) (1969). Therefore, in the eyes of equity, the insurer who has paid the insured his loss should recover from the tortfeasor. The wrongdoer will pay and the others are made whole. (2) It may arise out of the contract between the insurer and the insured. This is sometimes referred to as "conventional subrogation." 16 Couch on Insurance 2d, § 61:2, p. 75 (3). The right may be declared by statute. 16 Couch on Insurance 2d, § 61:6, p. 81. It is important to note that while the common law recognized subrogation in property damage claims, it did not recognize it in personal injury claims. *Wrightsman v. Hardware Dealers Mut. Fire Ins. Co.*, 113 Ga. App. 306 (147 SE2d 860) (1966). This was so because personal injury claims were not assignable at common law. These principles have been followed generally in our Code. OCGA § 44-12-24. *Ameri-*

---

"We have the right of subrogation under the Physical Damage (including collision coverage), Auto Liability, Basic Personal Injury Protection, and the Liability Other Than Auto and Physical Damage to Property sections of the Comprehensive Family Liability coverages in this policy.

"This means that after paying a loss to you or others under this policy, we will have the insured's right to sue for or otherwise recover such loss from anyone else who may be held responsible. Alternatively, we may require reimbursement from the insured out of any settlement or judgment that duplicates our payments. These provisions will be applied in accordance with state law. Any insured will sign such papers, and do whatever else is necessary, to transfer these rights to us, and will do nothing to prejudice them."

[2] Evidence on the motion showed that payment had been made to Banks by Nationwide and in return she had assigned the title to the car to Nationwide. The trial court granted the motion for summary judgment. On appeal, the Court of Appeals held the transfer of title did not include an assignment of Banks' right of action and reversed the trial court. We do not reach this issue on certiorari. Instead, we deal with the subrogation question dealt with in Division (2) of the Court of Appeals' opinion. *Banks v. Carter*, 173 Ga. App., supra.

*can Chain &c. Co., Inc. v. Brunson*, 157 Ga. App. 833, 835 (278 SE2d 719) (1981).

2. The General Assembly adopted the Motor Vehicle Accident Reparations Act (No-fault Act), supra, February 28, 1974. Ga. Laws 1974, p. 113. Portions of the Act became effective October 1, 1974 and the remainder March 1, 1975. Section 1 gave the short title, Section 2 defined terms, Section 3 set out minimum insurance coverage required, Section 4 listed optional coverages insurers must make available, and Section 5, among other things, dealt with subrogation. (The remaining Sections 6 through 17 did not bear upon the issue in this case.) Section 3 provided no owner of a motor vehicle required to be registered in Georgia (or any other person except a self insurer) should operate such a vehicle unless the owner had obtained insurance coverage. The insurance must include (1) liability coverage and (2) $5,000 coverage for compensation to insured injured persons without regard to fault for certain medical expenses, loss of income or earnings, expenses for services, and funeral expenses. Section 4 required the insurer to make available on an optional basis (1) coverage up to $50,000 for compensation as described in Section 3, and (2) compensation without regard to fault for damage to the insured motor vehicle subject to deductibles at the election of the policy holder, and loss of use of the vehicle. Section 5 was amended by Ga. Laws 1978, p. 2075, and as amended provided:

"Insurers and self-insurers providing benefits without regard to fault described in Sections 3 and 4 shall not be subrogated to the rights of the person for whom benefits are provided, except in those motor vehicle accidents involving two or more vehicles, at least one of which is a motor vehicle weighing more than 6,500 pounds unloaded. The right of recovery and the amount thereof shall be determined on the basis of tort law between the insurers or self-insurers involved. Expenses incurred in exercising the rights of subrogation hereunder shall be at the sole expense of the insurers and self-insurers involved. If the responsible tort-feasor is uninsured or is not a self-insurer, the insurer or self-insurer providing benefits shall have a right of action to the extent of benefits provided against such tort-feasor only in the event that the person for whom benefits are provided has been completely compensated for all economic and noneconomic losses incurred as a result of the motor vehicle accident."

3. This provision, quoted above, governs the right of an insurer who has paid benefits under Sections 3 and 4 of the No-fault Act to be subrogated to the rights of the recipient of the benefits against a third party tortfeasor. It is, therefore, important to understand what benefits are governed by Sections 3 and 4. Section 3 sets forth minimum no-fault insurance coverage which a policy must contain. This coverage affords benefits relating to personal injuries up to an aggre-

gate minimum limit of $5,000. Section 4 provides for optional no-fault insurance coverage which an insurer must offer. It has an aggregate limit of $50,000. It is a coverage which provides benefits for losses related to personal injuries as does Section 3, but it also is a coverage which provides benefits for losses for damage to the insured motor vehicle. Both type benefits are to be paid, of course, without regard to fault. The vehicle damage provision is by nature similar to the provision known as "collision" which pre-existed the 1974 No-fault Act as we have described in Division 1. Neither requires proof of fault. However, they are two separate coverages and do not necessarily provide identical benefits. Under Section 4 the coverage must provide benefits for damage to the motor vehicle plus benefits for loss of use. Both benefits may be made subject to deductibles elected by the policyholder. In contrast, the "collision coverage" contained in Banks' policy provided not only benefits for damage to the vehicle and its equipment, but also for loss of certain clothing and luggage. Further, Banks' collision coverage provided certain minimum benefits for transportation from the disabled vehicle to destination. The point of the comparison is simply to demonstrate that no-fault property damage is a separate coverage from collision.

The subrogation provisions of Section 5 of the 1974 No-fault Act, particularly the 1978 amendment in issue here, Ga. Laws 1978, p. 2075 undertake to govern subrogation rights for benefits paid under Sections 3 and 4. Section 5 does not govern subrogation rights for benefits paid under collision coverage. Those rights are still governed by the pre-No-fault Act principles described in Division 1.

It is undisputed in this case that Nationwide paid benefits to Banks under the collision coverage of the policy and not under the no-fault property damage coverage. Therefore, Nationwide is entitled to subrogation.

In *Auto-owners Ins. Co. v. Safeco Ins. Co. of America*, 245 Ga. 558 (266 SE2d 175) (1980), this court held that OCGA § 33-34-3 (e), a 1976 amendment to the 1974 No-fault Act, which prescribed which policy would be primary and which would be excess in situations involving retail new and used motor vehicle dealers and their customers and others included all coverages in the insurance policies involved. Thus, if such a policy contained collision coverage it would be governed by the automobile dealer amendment. Our decision in *Auto-owners* is not in conflict with our decision today. To the extent that *Horton v. Allstate Ins. Co.*, 171 Ga. App. 707 (2) (320 SE2d 761) (1984) is in conflict with our holding it is overruled.

*Judgment reversed. Hill, C. J., Marshall, P. J., Clarke, Weltner, Bell, JJ., and Judge William F. Grant concur. Smith, J., not participating.*

HILL, Chief Justice, concurring.

I concur in the opinion and judgment of the court. I would prefer that the application for insurance required by OCGA § 33-34-5 (b) be contained in the record, so that we would know positively that Ms. Banks rejected the optional property damage provided by OCGA § 33-34-5 (a) (3), and instead chose the traditional collision coverage offered by Nationwide. However, that application is not in this record, and the record which is before us shows that Ms. Banks was paid under her collision coverage.

In reaching this result, I do so upon the assumption that when this case is remanded to the Court of Appeals, it will consider a matter not decided by this court, namely whether the trial court erred insofar as it denied Ms. Banks' right to recover her $100 deductible, plus possibly punitive damages.

DECIDED JUNE 19, 1985 —
REHEARING DENIED JULY 9, 1985.

*Long, Weinberg, Ansley & Wheeler, Marjorie M. McCaw, Alston & Bird, Nill V. Toulme,* for appellants.

*Benjamin W. Beazley, Paine, Dalis, Smith & McElreath, Larry I. Smith, Bell & Bell, John C. Bell, Jr.,* for appellee.

*Powell, Goldstein, Frazer & Murphy, Frank Love, Jr., Eugene G. Partain, David R. Aufdespring, Robert M. Travis, Alston & Bird, Ronald L. Reid, Nill V. Toulme, King & Spalding, Joseph B. Haynes, Ralph B. Levy, Dwight J. Davis, Bovis, Kyle & Burch, Steven Kyle, John V. Burch, Karsman, Brooks, Painter & Callaway, Stanley Karsman, Alton D. Kitchings, Manley F. Brown, John C. Bell, Jr.,* amici curiae.