**Brenda J. BOHANNON and all other persons similarly situated, Plaintiffs,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant.**

**Civ. A. No. CV484–362.**

United States District Court, S.D. Georgia, Savannah Division.

Feb. 14, 1986.

James M. Thompson, Lee & Clark, Savannah, Ga., for plaintiffs.

John B. Miller, Miller, Simpson & Tatum, Savannah, Ga., Ronald L. Reid, Jack H. Senterfitt, Nill V. Toulme, Mary C. Gill, Atlanta, Ga., for defendant.

## ORDER

HAROLD L. MURPHY, District Judge.

An evidentiary hearing was held in this case to determine whether the case should proceed as a class action under Rule 23 of the Federal Rules of Civil Procedure. Having reviewed the evidence and argument of counsel, the Court has determined that the case should proceed as a class action. The class that the Court hereby certifies consists of those persons who, in connection with a motor vehicle insurance policy sold by the defendant in the state of Georgia, purchased optional no-fault property damage insurance as provided for in O.C.G.A. § 33–34–5(a)(3) (1982) (amended Nov. 1, 1982), who sustained damage to their vehicle as a result of a collision after April 6, 1978, but prior to March 15, 1984, who collected no-fault benefits, and whose insurer, the defendant, was successfully subrogated to its insured's property damage claim against the other party involved in the collision. The prerequisites of Rule 23 for class certification are met, however, only as to the quasi-contractual claim of money had and received and as to the federal civil RICO claim. Accordingly, the Court will certify the class in this action, but the class action may be maintained only as to the issue of money had and received and federal RICO. The remaining issues raised may be pursued by the plaintiff on

behalf of herself only. The Court anticipates bifurcating for trial the class claims and the plaintiff's individual claims.

## BACKGROUND

In 1974, the Georgia legislature enacted the Georgia Motor Vehicle Accident Reparations Act, 1974 Ga.Laws 113 [hereinafter cited as No–Fault Act], which, for the first time, authorized subrogation by automobile insurers for first party personal injury payments. *See* No–Fault Act, *supra* at 119. Subrogation by insurers for property damage claims was also recognized, though that aspect of the No–Fault Act merely paralleled the existing law with respect to collision benefits claims. *See, e.g., Vigilant Insurance Co. v. Bowman,* 128 Ga.App. 872, 874, 198 S.E.2d 346 (1973).

In 1978, the No–Fault Act was amended to change the provisions relating to subrogation. 1978 Ga.Laws 2075. Rather than authorizing subrogation, the amended Act disallowed subrogation.

"(1) Insurers and self-insurers providing benefits without regard to fault described in Sections 3 and 4 shall not be subrogated to the rights of the person for whom benefits are provided...."

*Id.* The benefits described in Section 4 of the Act include optional personal injury protection benefits, as well as optional no-fault property damage benefits. Thus, subrogation to the rights of claimants for no-fault property damage benefits was prohibited under the amended Act. Despite this prohibition, many insurance companies continued to be subrogated after their insureds collected benefits for damage to their automobiles.

In 1984, the No–Fault Act was again amended to change the provisions relating to subrogation. 1984 Ga.Laws 516. Subrogation continued to be disallowed as to all benefits under Sections 3 and 4, except subrogation was allowed as to no-fault property damage benefits. *Id.* at 516–17.

Plaintiff brought this action alleging that her automobile was damaged in a collision after 1978, but before 1984, that she received no-fault benefits under her insurance policy, and that her insurer was subrogated, in violation of the 1978 amendment to the No–Fault Act, to her rights against the party that caused the collision. Plaintiff also alleges that she was defrauded by her insurer because it was misrepresented to her that she had no claim against the party that caused the collision. Plaintiff also alleges that the defendant is liable to her for civil penalties under the Georgia and federal RICO statutes. Plaintiff seeks to maintain the suit on behalf of all similarly situated persons.

## FINDINGS OF FACT

1. The named plaintiff in this action, Brenda J. Bohannon, submitted an application for insurance to the Georgia Automobile Insurance Plan through an independent insurance agent.

2. Allstate subsequently insured the car under that application.

3. Her acceptance/rejection form for optional no-fault benefits under O.C.G.A. § 33–34–5(a) had accept and reject boxes for the following coverages:

Additional P.I.P. (with choices of $10,000, $25,000, and $50,000)

Comprehensive (with choices of Actual Cash Value (ACV) or $100 deductible)

Collision (with choices of ACV or $100 deductible)

Loss of Use

4. Plaintiff rejected optional P.I.P. benefits, chose comprehensive coverage with deductible, chose collision with deductible, and rejected loss of use.

5. On September 18, 1980, plaintiff was involved in an automobile accident while driving the insured car. Allstate paid her $1,414.52 for damage to her car.

6. Allstate made a subrogation claim against the insurer of the other car involved in the accident and received $1,514 in payment of the subrogation claim. Allstate subsequently paid to the plaintiff $100 representing her deductible.

7. It is unlikely that plaintiff ever read her insurance policy in connection with her property damage claim against Allstate.

8. Plaintiff was represented by an attorney in making her insurance claim in 1980.

9. During the years 1978–1984, Allstate provided coverage based on application forms provided under the Georgia Automobile Insurance Plan, as well as three different application forms that Allstate provided for "non-Plan" insureds. One of the non-Plan application forms contained accept and reject blocks for full coverage collision, full coverage comprehensive, and loss of use, with no options for a deductible. The remainder of the forms used by Allstate have accept and reject blocks for full property damage coverage and for deductible property damage coverage.

10. All of the policies in use during the years 1978–1984 contain property damage coverage without regard to fault denominated collision and comprehensive insurance.

11. Until the enactment of Georgia's No–Fault Act in 1974, Allstate offered only deductible collision coverage. After March 1, 1975, Allstate began making full coverage collision available in Georgia.

12. Approximately 6,490 of Allstate's insureds suffered property damage to their vehicle, were paid property damage benefits by Allstate, and had their property damage claim subrogated by Allstate during the period January 1, 1978 to March 15, 1984.

13. The average property damage claim paid by Allstate during this period was $1,268.92. The average subrogation recovery by Allstate was $1,052.37.

## CONCLUSIONS OF LAW

The class that plaintiff seeks to certify consists of persons who, in connection with a motor vehicle insurance policy sold by the defendant in the state of Georgia, purchased optional no-fault property damage insurance as provided for in O.C.G.A. § 33–34–5(a)(3) (1982) (amended Nov. 1, 1982), who sustained damage to their vehicle as a result of a collision after 1978, but prior to 1984, who collected no-fault benefits, and whose insurer, the defendant, was successfully subrogated to its insured's property damage claim against the other party involved in the collision. The claims that plaintiff raises against the defendant on behalf of this class include claims in quasi-contract, for money had and received, in tort, for fraud, constructive fraud, and conspiracy to defraud, and under the Georgia and United States civil RICO statutes.

Plaintiff moves the Court to certify this action as a class suit under Rule 23(b)(3) of the Federal Rules of Civil Procedure. Rule 23(a), however, specifies four prerequisites to maintaining a class action, commonly referred to as numerosity, commonality, typicality and adequate representation. Moreover, Rule 23(b)(3) imposes additional requirements, including the requirement that questions of law or fact common to the members of the class predominate over any questions affecting only individual members and the requirement that a class action be superior to other methods of adjudication. Rule 23(c)(4) provides that a class action may be maintained with respect to particular issues.

In this action, the requirements of Rule 23 are met as to the class of persons represented by the plaintiff to the extent that the plaintiff claims damages for money had and received and civil penalties for violations of the federal RICO statute. The class action may therefore be maintained only as to these claims. *See* Fed.R.Civ.P. 23(c)(4)(A). The remaining issues raised may be pursued by the plaintiff as an individual only.

Turning now to the Court's reasoning and its analysis under Rule 23, the Court first notes that, to a limited extent, the Court has had to consider the substance of the class action claims. As the Eleventh Circuit recognized in *Love v. Turlington*, 733 F.2d 1562 (11th Cir.1984), however, this circumstance on a motion for class certification is sometimes inevitable. *Id.* at 1564. The plaintiff in this action claims that she represents a class of persons who purchased optional no-fault property damage insurance as provided for in O.C.G.A. § 33–34–5(a)(3). Without prejudging the

plaintiff's claims on the merits, the Court must nonetheless determine under the law what constitutes no-fault property damage insurance in order to reach the Rule 23(a) issues on this motion for class certification.

I. No–Fault Property Damage Insurance

In *Carter v. Banks,* 254 Ga. 550, 330 S.E.2d 866 (1985), the Georgia Supreme Court considered whether the 1978 amendment to the No–Fault Act abolished an insurer's right of subrogation after paying collision benefits for damage to a motor vehicle. *Id.* at 551, 330 S.E.2d 866. The supreme court held that subrogation was abolished as to benefits paid under the No–Fault Act, including benefits paid for property damage. *Id.* at 553–54, 330 S.E. 2d 866. It was undisputed in the *Carter v. Banks* case, however, that the insurer paid benefits "under the collision coverage of the policy and not under the no-fault property damage coverage," *Id.* at 554, 330 S.E.2d 866. The supreme court therefore had no occasion to consider what constitutes no-fault property damage coverage. This Court, however, in considering the class action issues as to numerosity, commonality, and adequacy of representation, is faced with precisely that problem.

The Georgia Court of Appeals, when confronted with the problem of what constitutes no-fault property damage coverage, held that $100 deductible collision coverage offered by Allstate was optional no-fault property damage coverage as required by the No–Fault Act. *Horton v. Allstate Ins. Co.,* 171 Ga.App. 707, 709, 320 S.E.2d 761 (1984). The court of appeals found that, regardless of the name attributed to Allstate's coverage, when one looked at the coverage it provided, it was optional coverage paying compensation without regard to fault for damage to an insured motor vehicle. It was the coverage that the No–Fault statute required Allstate to make available.

■ Although the supreme court has indicated that *Horton* was overruled to the extent that it conflicted with *Carter v. Banks, see Carter v. Banks, supra* 254 Ga. at 554, 330 S.E.2d 866, the supreme court never reached the issue of what constitutes

no-fault property damage under the No–Fault Act. Accordingly, this Court finds that the principle of law announced in *Horton,* that the Court will look to the nature of the coverage to determine whether it constitutes coverage under the No–Fault Act, remains the law in Georgia. In the present case, the collision coverage offered by Allstate was no-fault property damage coverage as required by the No–Fault Act.

Allstate offered no other coverage for property damage in its policy. Allstate nonetheless argues that the No–Fault Act required only that it offer full coverage collision and that, under the Act, Allstate offered only full coverage collision. Collision coverage with a deductible, Allstate argues, is traditional collision coverage not subject to the requirements of the Act. Thus, Allstate would create two legally distinct coverages from one policy provision, based on evidence that full coverage collision was only offered after the enactment of the No–Fault Act, and based on the concurring opinion in the *Southeastern Fidelity Insurance Company v. Nails,* 254 Ga. 555, 333 S.E.2d 370 (1985).

The supreme court in *Nails* reversed the lower court with a one sentence opinion that stated: "The result in this case is controlled by our decision in *Carter v. Banks,* 254 Ga. 550, 330 S.E.2d 866 (1985). Chief Judge Hill, in his concurrence noted that, unlike in the *Carter v. Banks* case, the insurance application was in the record before the Court in the *Nails* case, and it showed that optional collision coverage had been rejected. Property damage benefits had nonetheless been paid under "pre-no-fault collision coverage." Nothing in the majority opinion or in the concurring opinion indicates what on the application form had been rejected or what in the policy constituted pre-no-fault collision coverage.

Having been involved in the *Nails* and *Carter v. Banks* litigation, counsel for Allstate suggests that the applications and policies involved in those cases are similar to Allstate's forms and policies. Allstate argues that the only way to reconcile the statements made by the majority and concurring opinions is to find that no-fault

property damage coverage was offered in the form of full collision coverage, and that traditional collision coverage was offered in the form of deductible collision coverage. Upon close inspection, however, this Court finds the majority and concurring opinions irreconcilable; and, in light of the language of the No–Fault Act and Allstate's policy, the Court finds Allstate's position untenable.

The No–Fault Act required that insurers make available on an optional basis:

> Compensation without regard to fault for damage to the insured motor vehicle not to exceed the actual cash value of the vehicle at the time of the loss, including up to $10.00 per day with a maximum of $300.00 for the loss of use of the motor vehicle, *provided that benefits payable under this paragraph may be subject to deductibles at the written election of the policy holder.*

O.C.G.A. § 33–34–5(a)(3) (1982) (amended Nov. 1, 1982) (emphasis added). The Georgia Commissioner of Insurance parroted this language in his regulations stating that as to collision and comprehensive coverage:

> No mandatory deductibles are required but the benefits payable under this paragraph may be subject to deductibles at the written election of the policyholder or applicant.

Georgia Insurance Regulations § 120–2–28.06(3)(b). Finally, O.C.G.A. § 33–34–5(a)(3) was amended in 1982 to state:

> Compensation without regard to fault for damage to the insured motor vehicle not to exceed the actual cash value of the vehicle at the time of the loss, including up to $10.00 per day with a maximum of $300.00 for the loss of use of the motor vehicle, *provided that benefits payable under this paragraph may be subject to deductibles at the request of the policyholder.*

The Allstate policy contains only one type of property damage coverage, called collision coverage. The coverage is optional and provides compensation without regard to fault. It is the coverage that the No-

Fault Act required Allstate to make available. The fact that the insured in this case elected a deductible does not change the nature of the coverage. The option to have a deductible no-fault coverage was and is expressly mandated by the No–Fault Act.

Indeed, under the directives of the No–Fault Act, this Court would have grave doubts about the sufficiency of the offer of optional property damage benefits if they were offered, as Allstate suggests, without any option for a deductible. According to an Allstate letter to the Georgia Commissioner of Insurance, the premium for no-deductible collision coverage is at least 300% greater than the premium for deductible. The Court interprets the last clause of O.C.G.A. § 33–34–5(a)(3) to be the legislature's recognition of the fact that no-deductible property damage coverage is not an economical option for most people. The clause reveals the intent of the legislature to allow a deductible in connection with no-fault property damage coverage.

Moreover, two of the three sample applications submitted by Allstate as being in use during the period of time in issue, contain accept/reject boxes not only for full coverage collision, but also for collision coverage with a deductible. These applications evidence Allstate's own understanding that their collision coverage was the no-fault property damage coverage that the Act required them to provide and that the coverage could be subject to deductibles at the election of the insured.

The supreme court's dicta in *Carter v. Banks,* upon close inspection, lends no support to the distinction Allstate seeks to make. The supreme court suggested that a distinction should be drawn between "traditional collision coverage" and statutory no-fault property damage coverage. In suggesting this distinction, however, the supreme court observed in footnote one of its opinion, as to the insurance policy then before the court, that:

> The policy provided "basic personal injury protection," the minimum required coverages of OCGA § 33–34–4. It also contained $5,000 "additional personal injury protection," the optional coverages

of OCGA § 33–34–5(a)(1) and (2) *but not the coverage for damage to the insured motor vehicle of OCGA § 33–34–5(a)(3).* *Carter v. Banks, supra* at 551 n. 1, 330 S.E.2d 866 (emphasis added). Thus the supreme court found that the policy involved in the *Carter v. Banks* case provided no no-fault property damage coverage. The concurrence in *Nails* found that no-fault property damage coverage had been rejected. The *Nails* concurrence implies, contrary to the majority's statement in *Carter v. Banks,* that the policy did provide no-fault property damage coverage. All-state's argument that it offered both statutory no-fault coverage and traditional collision coverage with only one policy provision does not follow from the *Carter v. Banks* decision.

The supreme court decided *Carter v. Banks* on unique and very narrow grounds. The court held that the insurer in that case was legally subrogated to its insured's property damage claim, because it was undisputed that the insured had traditional collision coverage. The court's statement that the policy contained no no-fault property damage coverage was not necessary to the court's disposition of the case as it was decided. The supreme court therefore had no occasion to consider the consequences of its dicta.

This Court, in considering the consequences, finds that statutory no-fault property damage coverage as required by O.C.G.A. § 33–34–5(a)(3) is what Allstate in its policy calls collision coverage. As there is no other property damage coverage found in the policy, a finding to the contrary would be a finding that policy language approved by the Georgia Commissioner of Insurance did not meet the requirements of the No–Fault Act. Moreover, if the policies written in Georgia contained no no-fault collision benefits, then the required offer of optional benefits under O.C.G.A. § 33–34–5(b) was not made. Yet, if the Court gave policy holders the opportunity to have retroactive coverage, as the Court has in P.I.P. cases where a proper offer was not made, the amount of the premium would be unknown and the coverage would be unavailable under the policy.

Finally, the Court is not persuaded by the supreme court's dicta that in order to have offered no-fault property damage coverage, the insurer must have offered the coverages mandated in O.C.G.A. § 33–34–5(a)(3) as a complete package. *Carter v. Banks, supra* at 554, 330 S.E.2d 866. Insurance companies doing business in Georgia apparently determined, with the approval of the Georgia Commissioner of Insurance, that the required no-fault property damage coverage could legally be offered under the No–Fault Act in the component parts of collision coverage and loss of use coverage. Some insurance companies also offered additional coverages, such as for loss of clothing and luggage. Regardless of which of these component parts was chosen by the insured, if some or all were chosen, the insured was to be compensated "without regard to fault for damage to the insured motor vehicle not to exceed the actual cash value of the vehicle at the time of the loss." O.C.G.A. § 33–34–5(a)(3). The insured had elected no-fault coverage.

## II. Rule 23(a), (b)(3)

### A. Numerosity

■ A class action may be maintained only if the class is so numerous that joinder of all members is impracticable. Fed.R. Civ.P. 23(a)(1). In light of the Court's determination that Allstate's collision coverage, with or without a deductible and with or without loss of use and clothes and luggage coverage, is no-fault property damage coverage under the No–Fault Act, the Court finds at this time that the numerosity requirement of Rule 23(a) is met. Although the plaintiff has not presented specific evidence of the number of potential class members, the evidence before the Court indicates that the number is sufficiently large to make joinder impracticable. The evidence is therefore sufficient to at least conditionally certify the class proposed by the plaintiff. *See Evans v. U.S. Pipe & Foundry Co.,* 696 F.2d 925, 930 (11th Cir.1983).

### B. Commonality, Typicality and Manageability

A class action may be maintained only if there are questions of law or fact common

to the class and the claims or defenses of the representative parties are typical of the claims or defenses of the class. Fed.R. Civ.P. 23(a)(2), (3). As the plaintiff seeks to certify this action for class treatment under Rule 23(b)(3), she must also show that the questions of law and fact common to the members of the class predominate over questions affecting only individual members. Fed.R.Civ.P. 23(b)(3). While there is little question that the claims made in plaintiff's complaint on behalf of the class have aspects that are common to the members of the class, the questions common to the class in plaintiff's tort claims and Georgia RICO claims do not predominate. Indeed, because of the individual inquiry required, any attempt to try as a class action the tort and Georgia RICO claims would present insurmountable manageability problems for the Court. *See* Fed.R.Civ.P. 23(b)(3)(D).

Plaintiff's tort claims all revolve around fraud. Under Georgia law, the elements of a fraud claim include a material misrepresentation and reliance. *See Wolfe v. Chrysler Corp.*, 734 F.2d 701, 703 (11th Cir.1984) (citing *Tolar Construction Co. v. GAF Corp.*, 154 Ga.App. 127, 129, 267 S.E. 2d 635 (1980)). As the Fifth Circuit has stated: "If there is any material variation in the representations made or in the degrees of reliance thereupon, a fraud case may be unsuited for treatment as a class action." *Simon v. Merrill Lynch, Fenner and Smith, Inc.*, 482 F.2d 880, 882 (5th Cir.1973). The allegations in plaintiff's complaint and the evidence presented at the class certification hearing show that plaintiff's fraud claims are unsuited for class action treatment.

Plaintiff argues that alleged written misrepresentations contained in defendant's insurance policies provide the commonality of issues among class members required under Rule 23. Plaintiff's pleadings, however, allege oral misrepresentations as well. These oral misrepresentations would vary for each member of the class. Moreover, evidence of reliance on the alleged misrepresentations would involve highly individualized inquiry, especially in light of the evidence before the Court that members of the class did not read the written policy and that members of the class were represented by legal counsel. The Court therefore finds that plaintiff's tort claims may not proceed as a class action.

Likewise, the common questions. of fact and law with regard to plaintiff's Georgia RICO claims do not predominate over the diverse investigations required for each member of the class. The predicate act upon which the plaintiff alleges a pattern of racketeering activity is theft by deception. *See* O.C.G.A. § 16–14–3(3)(A)(ix) (1982). Under Georgia law, the plaintiff would be required to show as to each member of the class that false representations were made and "that the party to whom the false statements were made, relying on their truth, was thereby induced to part with his property." *Chandler v. State*, 80 Ga.App. 550, 555, 56 S.E.2d 794 (1949). Plaintiff's Georgia RICO claim does not meet the commonality and manageability requirements of Rule 23. The Court will therefore deny class action certification as to the Georgia RICO claim.

■ Plaintiff's federal civil RICO claim, under 18 U.S.C.A. § 1964 (1984), presents no such commonality and manageability problems. As explained by the Supreme Court in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed. 2d 346 (1985), the elements of a civil RICO action include (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity that (5) causes injury to the plaintiff's business or property. 87 L.Ed. 2d at 358–59. The racketeering activity alleged in this action is mail fraud, which requires proof of (1) participation in a scheme to defraud, (2) use of the mails in furtherance of the scheme, and (3) that the defendant itself used the mails in connection with the scheme. *See United States v. Haimowitz*, 725 F.2d 1561, 1568–69 (11th Cir.1984). The alleged injury of each member of the class in this action is well defined. The alleged injury is to the plaintiffs property in the amount that the defendant was subrogated after paying no-fault benefits. The remaining elements of the RICO claim all focus on the activities of

the defendant and require no individualized inquiry. Accordingly, plaintiff's federal civil RICO claim presents no commonality or manageability problems for the Court.

Plaintiff's common law claim for money had and received also presents no commonality or manageability problem. Under Georgia law, "An action for money had and received lies against one who is unjustly enriched at the expense of another through the receipt of money, which in equity and good conscience, he or she ought not to retain." *Barton & Ludwig, Inc. v. Thompson,* 170 Ga.App. 187, 188, 316 S.E. 2d 786 (1984). As the court of appeals noted in *International Indemnity Co. v. Bakco Acceptance, Inc.,* 172 Ga.App. 28, 322 S.E.2d 78 (1984), the principle of unjust enrichment lies at the heart of this theory of recovery. *Id.* at 32, 322 S.E.2d 78. While the facts may differ somewhat for the individual class members, the Court finds that the common issue of unjust enrichment predominates as to plaintiff's claim for money had and received.

## C. Adequacy of Representation

The focus of the inquiry as to the adequacy of the class representation is whether plaintiff's counsel are qualified, experienced, and generally able to conduct the proposed litigation, and whether plaintiff has interests antagonistic to those of the class. *Griffin v. Carlin,* 755 F.2d 1516, 1533 (11th Cir.1985). As the Court requested at the evidentiary hearing that counsel limit their proof and argument as to adequate representation, the Court has considered the arguments presented by written brief. In light of the Court's rulings in this Order, defendant's objections on the basis of inadequate representation of the class appear to be without merit. If the defendant, however, wishes to raise a bona fide question as to this issue, it may do so. The Court will not hesitate to decertify the class if at any time it should appear that adequate representation is not being afforded. *See Guerine v. J & W Investment, Inc.,* 544 F.2d 863 (5th Cir.1977).

## D. Superiority of Class Action

As to the claims of money had and received and federal RICO, the Court finds that resolving these claims as to the entire class in a single proceeding is superior to requiring each member to sue individually. There is no evidence that individual members of the class have any great interest in controlling the prosecution of these claims, or that other litigation on these claims is ongoing to any great extent, or that it is undesirable to concentrate the litigation in this forum. Judicial economy is served by hearing these claims as a class action.

## III. Rule 23(c)(2)

Plaintiff submitted her proposed notice to class members to the Court prior to the evidentiary hearing on certification. In light of the Court's certification of only certain issues, the proposed notice is inappropriate. The Court directs the plaintiff to prepare a new proposed notice to class members and to file the notice with the Court and to serve it on the defendant within ten days of receipt of this Order. The defendant may file objections and/or its own proposed notice within ten days thereafter. The Court will then issue the notice that plaintiff shall be responsible for sending by mail to each class member.

ACCORDINGLY, the Court certifies this action as a class suit to proceed on the issues of money had and received and federal civil RICO. The remaining issues raised in the complaint may be pursued by the plaintiff as an individual only. Plaintiff shall submit a proposed notice to class members within ten days. Defendant shall respond within ten days thereafter.