45001. ALLSTATE INSURANCE COMPANY v. BOHANNON.
45002. STATE FARM FIRE & CASUALTY COMPANY
v. NIX et al.
45003. GEORGIA FARM BUREAU MUTUAL INSURANCE
COMPANY v. DAVIS et al.
45004. NATIONWIDE MUTUAL INSURANCE COMPANY
v. PRESCOTT et al.
45005. TRAVELERS INSURANCE COMPANY v. MAY et al.
(365 SE2d 838)

HUNT, Justice.

In this certified question from the United States Court of Appeals for the Eleventh Circuit, we are asked "[w]hether the insurance policy involved in this case was issued to provide 'benefits without regard to fault'[1] . . . or to provide traditional insurance coverage, as the latter term is used in *Carter v. Banks,* 254 Ga. 550 (330 SE2d 866) (1985)."

1. The issue in *Carter* hinged on the meaning of the 1978 amendment to Section 5 (d) of the Georgia Motor Vehicle Accident Reparations Act of 1974, stating that "[i]nsurers and self-insurers providing *benefits without regard to fault* described in Code Sections 33-34-3 and 33-34-4 *shall not be subrogated* to the rights of the person for whom benefits are provided. . . ." (Emphasis supplied.) Hence, we were asked whether that statutory language abolished an insurance company's right to be subrogated to its insured's settled claim against a tortfeasor for property damage to the insured's motor vehicle. In our holding, we distinguished between two kinds of property damage

---

[1] Pursuant to section 4 of the Georgia Motor Vehicle Accident Reparations Act, as described in section 5 of the Motor Vehicle Accident Reparations Act, in the version amended by Ga. Laws 1978, p. 2075.

insurance — traditional collision coverage and statutory no-fault coverage — and ruled that the 1978 amendment was intended to affect the latter rather than the former.[2] We held, in other words, that the question of subrogation depends on *the type of coverage contracted in each insurance contract.* Accordingly, any document making up a contract must be examined to decide between the two types of coverage, and hence, to decide any issue of subrogation as well.

At the time of our holding, the class action suits now before us were pending in the federal district courts. These class action suits are against insurance companies which had in fact collected collision damages from tortfeasors through subrogation of their insureds' claims during the amendment's effective period from its passage in 1978 until its repeal in 1984.[3] The plaintiff classes of insureds, claiming that the insurance companies had no right to subrogate these claims under the 1978 amendment, sought to recoup for themselves the damages the insurance companies collected from these tortfeasors. After consolidating the cases and examining a more complete record than that available to our court in *Carter,* the district court ruled that the benefits paid to the plaintiff classes were paid as no-fault property damages rather than under traditional collision coverage. It then certified the matter to the Eleventh Circuit for interlocutory review.

The insurance companies contend that the policies in question here are virtually identical with the policy considered in *Carter.* They argue that because in that case we held that benefits were paid under traditional collision coverage, we must do so in this case, too. However, as was pointed out in the district court's order, it was undisputed in *Carter* that benefits were paid under the policy's traditional collision coverage rather than under the no-fault property damage coverage. Thus, as the district court also noted, the holding in *Carter* is very narrow and consequently fails to answer the question presented here. Indeed, the majority opinion in *Carter,* explaining the reason for its extensive remarks comparing the history of traditional collision coverage with no-fault property damage coverage, commented: "The point of the comparison is simply to demonstrate that *no-fault property damage is a separate coverage from collision.*" Id.

---

[2] "The subrogation provisions of Section 5 of the 1974 No-fault Act, particularly the 1978 amendment in issue here, Ga. Laws 1978, p. 2075 undertake to govern subrogation rights for benefits paid under Sections 3 and 4. Section 5 does not govern subrogation rights for benefits paid under collision coverage. Those rights are still governed by the pre-No-Fault Act. . . ." *Carter v. Banks,* 254 Ga. 550, 554 (330 SE2d 866) (1985).

[3] Ga. Laws 1984, p. 516 (OCGA § 33-34-3 .(d) (1) (B)) removed the prohibition against subrogation relating to compensation without regard to fault for damage to the insured motor vehicle. These claims, and others like them, arose during the operational period of the 1978 amendment.

at 554. (Emphasis supplied.)

Viewed in this light, it is apparent that *Carter* did not address the specific question of what constitutes no-fault property damage under the No-Fault Act. However, the Court of Appeals has confronted that very issue, both before and after *Carter*, and has consistently followed the principle of law that the court looks to the *nature* of the coverage to decide whether it falls under the No-Fault Act. See *Horton v. Allstate Ins. Co.*, 171 Ga. App. 707, 708 (2) (320 SE2d 761) (1984).[4] We will apply that rule to these cases.

The policies in question do not provide for two separate types of property damage coverage. If that were the case, our task would be much easier. Instead, there is but one type of property damage coverage offered. It is optional and provides for payment without regard to fault. The insurance companies argue that this *one* provision for property damage in fact creates two legally distinct coverages — traditional collision and no-fault property damage coverage. In support of its argument that the coverage here is traditional collision coverage, the insurance companies argue that the No-Fault Act required that it offer only full (nondeductible) collision coverage. The insurance companies additionally argue (1) that collision coverage with a deductible is traditional collision coverage, not subject to the Act's requirements, and (2) that since the insureds in this case selected a deductible, the benefits were not paid under the Act, but under traditional collision coverage. But these arguments fail: the option to have a deductible no-fault coverage was provided by the express language of the No-Fault Act.[5] Clearly, as contemplated by the statute, the insurance company *may* offer such deductible coverage as part of the no-fault application. If the policyholder then elects deductible coverage as an optional no-fault benefit, he has purchased — and the company has issued — a policy providing no-fault property damage rather than traditional collision coverage. Plainly, under these circumstances, the mere choice of a deductible benefit does not provide

---

[4] Although we held that *Horton* was overruled in *Carter* to the extent it conflicted with our opinion, we agree with the district court that the foregoing principle reiterated in *Horton* was not in conflict with *Carter* and remains the law in Georgia.

[5] The No-Fault Act required that insurers make available on an optional basis: "Compensation without regard to fault for damage to the insured motor vehicle not to exceed the actual cash value of the vehicle at the time of the loss, including up to $10.00 per day with a maximum of $300.00 for the loss of use of the motor vehicle, *provided that benefits payable under this paragraph may be subject to deductibles at the written election of the policyholder.*" OCGA § 33-34-5 (a) (3) (1978) (as amended November 1, 1982). (Emphasis supplied.) The Georgia Commissioner of Insurance issued regulations implementing this provision of the Act, stating that as to collision and comprehensive coverage "No mandatory deductibles are required but the benefits payable under this paragraph may be subject to deductibles at the written election of the policyholder or applicant." Georgia Insurance Regulations, Section 120-2-28-.06 (3) (b).

the answer desired by the insurance companies.

The only applications presented to these plaintiffs, and upon which insurance coverage was issued, were forms tendered by the insurers as required by OCGA § 33-34-5, relating to "optional coverages," and included, along with coverage for property damage, increased personal injury protection. Accordingly, we have found nothing to indicate that the coverage is anything *other* than the "no-fault" coverage required by law to be offered by the carrier. Based on the application by which each chose deductible coverage, each was to be compensated in the event of a collision "without regard to fault for damage to the insured motor vehicle not to exceed the actual cash value of the vehicle at the time of the loss." OCGA § 33-34-5 (a) (3). Accordingly, we interpret these contracts as providing "no-fault" coverage. As to all the other members of the class we cannot say, but must leave that to be resolved on a contract-by-contract basis.[6]

2. We have limited the answer to the certified question to the strict confines of the question itself. Nothing in the answer should be construed as addressing any other issues with respect to entitlements under OCGA § 33-34-1 et seq., or other provisions of Georgia law.

*Certified question answered. All the Justices concur, except Marshall, C. J., Smith and Bell, JJ., who concur specially as to Division 2, and Smith, J., who dissents as to Division 1.*

MARSHALL, Chief Justice, concurring in Division 1 and concurring specially in Division 2.

The particular phrasing of the certified question does not restrict our consideration of the problems involved and issues raised in the case, as perceived by us in our analysis thereof. *Martinez v. Rodriguez*, 394 F2d 156, 159 n. 6 (5th Cir. 1968). Under my analysis of this case, the issue concerning the ultimate liability of the insurance carriers to their policyholders is a question determinable through construction of the no-fault statute in its entirety, and is not finally resolved by the holding in Div. 1 of the majority opinion that the collision coverage contained within the insurance policies herein constitute no-fault coverage rather than traditional collision coverage. In my view, after construing the various statutory provisions, it remains

---

[6] The record before us shows that in each of the named plaintiffs' cases the deductible collision coverage was elected by the policyholder as an option on the no-fault application form. We do note a *sample* form of Allstate's which did not offer deductible coverage on the no-fault application. If a policyholder executed such an application or if he rejected all of the no-fault property damage options but was otherwise afforded collision coverage, then presumably his policy would provide traditional collision coverage.

Not before us in the record, but asserted in the briefs, is the insurance companies' contention that lesser premiums were charged giving credit for the reservation of subrogation rights. What effect this sort of evidence would have in a proper case, we cannot say.

unclear how this ultimate issue should be resolved. Therefore, for reasons which follow, I would hold that under these statutory provisions, taking into consideration the underlying purposes of the Act, the ultimate right of the plaintiff/policyholders in this class action to recover the sums in dispute from the defendant/insurance carriers is circumscribed to the extent stated, infra, notwithstanding the fact that the sums in dispute constitute benefits for no-fault collision coverage.

Under § 10 (b) of the Act, OCGA § 33-34-9 (b), the insured's statutory entitlement extends no further than to bring an action against the tortfeasor for optional no-fault benefits, although the insured is precluded from pleading and recovering damages coterminous with mandatory benefits. *City Council of Augusta v. Lee*, 153 Ga. App. 94 (2) (264 SE2d 683) (1980); *Hall v. White*, 150 Ga. App. 545 (258 SE2d 256) (1979). *McGlohon v. Ogden*, 251 Ga. 625 (308 SE2d 541) (1983); *State Farm Mut. Auto. Ins. Co. v. Five Transp. Co.*, 246 Ga. 447 (271 SE2d 844) (1980). However, where the insurer's statutory subrogation rights are extant and enforceable, such subrogation rights authorize the insurer to recover both mandatory and optional no-fault benefits. *Five Transp. Co.*, supra; *McGlohon*, supra. And, prior to the 1978 Amendment to § 5 of the Act, OCGA § 33-34-3 (d) (1), the insurer's subrogation rights were to be exercised by intercompany agreements between insurance carriers or by binding intercompany arbitration. See *Five Transp. Co.*, supra; *McGlohon*, supra.

Thus, the insurance carriers in this case could have recouped the sums in controversy herein through a purported assertion of their albeit statutorily prohibited subrogation rights through two distinct methods. First, the insurers could have maintained actions in court for damages against the respective tortfeasors, or they could have settled such actions with the tortfeasor's liability insurance carrier. Second, the insurers could have asserted such purported subrogation rights through intercompany arbitration or agreement with the tortfeasors' insurance carriers, under the auspices of the no-fault statute's pre-1978 subrogation provisions.

Consequently, under the no-fault statutory scheme, where the insurers maintained or settled actions in court for damages against the tortfeasors, I would hold that the insurers are liable to their policyholders for refund of those damages recovered against the tortfeasors, which damages constituted no-fault property damage benefits written as optional no-fault coverage. However, a trial court, in its final accounting with respect to the disposition of such sums to the policyholders, certainly would be authorized to set off against the monetary awards to the policyholders the reasonable costs incurred by the insurers in recovering such monies.

I would further hold, again under the no-fault statutory scheme,

136

that where the purported subrogation rights were asserted through intercompany arbitration or agreement, the claim for recoupment of these sums inheres in the tortfeasors' insurance carriers and not the plaintiff/policyholders herein.

I am authorized to state that Justice Smith, subject to his dissent in Division 1, and Justice Bell join in this special concurrence.

DECIDED MARCH 18, 1988 —
RECONSIDERATION DENIED MARCH 30, 1988.

*Alston & Bird, Ronald L. Reid, Nill V. Toulme, Ricky Charles Silver, Miller, Simpson & Tatum, John B. Miller, Ranitz, Mahoney, Forbes & Coolidge, Morton G. Forbes, Groover & Childs, Denmark Groover, Jr.,* for appellant (case no. 45001).

*Nixon, Yow, Waller & Capers, John B. Long, Lee & Clark, H. Sol Clark, James M. Thompson, Gambrell, Clarke, Anderson & Stolz, Irwin W. Stolz, Jr., Seaton D. Purdom, Paine, Dalis, Smith & McElreath, Larry I. Smith, James M. Thompson,* for appellee.

*Powell, Goldstein, Frazer & Murphy, David R. Aufdenspring, Dean S. Daskal,* for appellant (case no. 45002).

*Rand & Ezor, Kenneth Behrman, Walbert & Hermann, David E. Walbert, Paul D. Hermann, Bell & Bell, John C. Bell,* for appellees.

*Ranitz, Mahoney, Forbes & Coolidge, Morton G. Forbes, Birney Bull,* for appellant (case no. 45003).

*Jones, Osteen, Jones & Arnold, Billy N. Jones, G. Brinson Williams, Charles M. Jones,* for appellees.

*Karsman, Brooks, Painter & Callaway, Stanley M. Karsman, Kenneth L. Royal,* for appellant (case no. 45004).

*Paine, Dalis, Smith & McElreath, Larry I. Smith, Nixon, Yow, Waller & Capers, John B. Long, Lee & Clark, H. Sol Clark, James M. Thompson, Gambrell, Clarke, Anderson & Stolz, Irwin W. Stolz, Jr., Seaton D. Purdom,* for appellees.

*Dickens & Irwin, Oliver B. Dickens, Jr., Bryan F. Dorsey,* for appellants (case no. 45005).

*Gambrell, Clarke, Anderson & Stolz, Irwin W. Stolz, Jr., Seaton D. Purdom, Lee & Clark, H. Sol Clark, James M. Thompson, Paine, Dalis, Smith & McElreath, Larry I. Smith, Nixon, Yow, Waller & Capers, John B. Long,* for appellees.