36146, 36147. BRADLEY *v.* SWIFT & COMPANY; and *vice versa.*

Decided May 11, 1956.

 

*J. Paxson Amis, Malcolm C. Tarver*, for plaintiff in error.
*Hardin & McCamy*, contra.

CARLISLE, J. ■ "The construction of a contract is a question of law for the court." Code § 20-701.

"In differentiating contracts of suretyship from contracts of guaranty, Justice Cobb, speaking for the court in the case of *Manry* v. *Waxelbaum*, 108 *Ga.* 14, 17 (33 S. E. 701), said: 'One difference is pointed out by our code. It says that a contract of suretyship "differs from a guaranty in this, that the consideration of the latter is a benefit flowing to the guarantor." Civil Code [of 1895], § 2966. . . In brief, we understand the difference to be this: A surety binds himself to perform if the principal does not, without regard to his ability to do so. His contract is equally absolute with that of his principal. They may be sued in the same action, and judgment may be entered up against both. A guarantor, on the other hand, does not contract that the principal will pay, but simply that he is able to do so; in other words, a guarantor warrants nothing but the solvency of the principal. Before an action can be maintained against a guarantor, therefore, it must be shown that the principal is unable to perform. The surety says to the creditor, if your debtor will not pay I will pay. The guarantor says to him, proceed first against the principal, and if he should not be able to pay, then you may proceed against me. It has been said that there is no instance in the books of a guarantor contracting jointly with his principal.' 'It is often difficult to tell whether a particular contract is one of guaranty or suretyship. "A surety and a guarantor have this in common, that they are both bound for another person; yet there are points of difference between them which should be carefully noted. A surety is usually bound with his principal by the same instrument, executed at the same time and on the same considera-

tion. He is an original promisor and debtor from the beginning, and is held ordinarily to know every default of his principal. . . On the other hand, the contract of the guarantor is his own separate undertaking, in which the principal does not join. It is usually entered into before or after that of the principal, and is often founded on a separate consideration from that supporting the contract of the principal. The original contract of the principal is not the guarantor's contract, and the guarantor is not bound to take notice of its performance." 1 Brandt on Suretyship (3d ed.), § 2. The surety joins in the same promise as his principal and is primarily liable; the guarantor makes a separate and individual promise and is only secondarily liable. His liability is contingent on the default of his principal, and he only becomes absolutely liable when such default takes place and he is notified thereof.' *Musgrove* v. *Luther Publishing Co.,* 5 *Ga. App.* 279, 281 (63 S. E. 52). 'In those cases relating to negotiable instruments, where, from the nature of the transaction and of the instrument, the sole test which need be applied is the one mentioned by the code section quoted, . . . there is no great difficulty in arriving at a conclusion as to the nature of the contract. But since the distinguishing characteristics between these two kinds of contracts are not thus limited by the question of consideration, and since the test which has been mentioned is more in the nature of an earmark, not such as to constitute but such as merely to indicate the true nature of the contract, and since such a test is therefore frequently indecisive . . , it is often necessary to bear in mind the true and fundamental distinctions between the one contract and the other. . . It is evident that a surety, who simply joins the principal in thus becoming liable upon the principal's obligation, will usually, from the nature of such transaction, become "bound with his principal by the same instrument, executed at the same time and on the same consideration" (1 Brandt on Suretyship (3d ed.) § 2 . . . ); while a guarantor, who enters upon his own separate and distinct undertaking, will usually, from the nature of such a transaction, become bound before or after the obligation of the principal, and the contract "is often founded on a separate consideration from that supporting the contract of the principal." Brandt on Suretyship, supra. Thus it is that since the contract

of guaranty must, like all other contracts, be founded on a consideration, and since the guarantor's promise can not be presumed to be founded on the consideration supporting the separate promise of the principal debtor, in which the guarantor does not join, it follows that as a general proposition a contract of guaranty must be expected to be founded on some new or independent consideration flowing directly to the guarantor. Civil Code (1910), § 3538. Such, as already indicated, need not always be the case, however; as, for example, where one has guaranteed payment for goods before their delivery, and on the faith of such guaranty, a sale and delivery is thereafter made to the principal. *Sims* v. *Clark*, 91 *Ga.* 302 (2) (18 S. E. 158); *Holmes* v. *Schwab*, 141 *Ga.* 44 (80 S. E. 313); *Small Co.* v. *Claxton*, 1 *Ga. App.* 83 (57 S. E. 977); *Sheffield* v. *Whitfield*, 6 *Ga. App.* 762 (65 S. E. 807); 28 C. J. 915, § 46 et seq. In cases such as these the agreement has been construed and upheld as a contract of guaranty, although no benefit flowing to the guarantor is apparent, unless it be under the general presumption that some benefit inures to him on account of credit extended to his principal. 1 Brandt on Suretyship (3d ed.), § 25.' *Etheridge* v. *Rawleigh Co.*, 29 *Ga. App.* 698, 702 (116 S. E. 903)." *Brilliant Coal Co.* v. *Gandy*, 51 *Ga. App.* 264, 265 (180 S. E. 379).

Properly construed in the light of the foregoing authorities, the contract under which the plaintiff seeks to hold the defendant liable for the unpaid balance on the account between the plaintiff and Moreland, is one of guaranty. The paper alleged to have been signed by Moreland on July 31, 1951, did not become effective as a contract until the agreement contained therein was confirmed by the plaintiff on September 11, 1951, and this confirmation was not entered upon that agreement until the defendant had, on September 6, 1951, entered into his separate agreement with the plaintiff. The defendant's agreement recites that a consideration, separate from that contained in the contract between the plaintiff and Moreland has been paid the defendant, and that specified goods are to be shipped to Moreland upon the strength of the defendant's guaranty of full performance by Moreland of his contract, under the terms of which the plaintiff is to ship certain goods to Moreland to be sold by him as the plaintiff's agent and for which Moreland is to account to the plaintiff in a specified manner.

■ A discharge in bankruptcy of a principal debtor from his liability under the terms of a contract to which he is a party does not generally operate to discharge his surety or guarantor. 11 U. S. C. A. § 34; *Hearn* v. *Durrence*, 33 *Ga. App.* 296 (125 S. E. 794); *DeLoach* v. *Kennedy*, 23 *Ga. App.* 736 (99 S. E. 314); *Steinhouser & Wight* v. *Adair*, 20 *Ga. App.* 733 (93 S. E. 280). There was, consequently, no error in the trial court's refusal to abate the action against the defendant upon the ground urged in the plea that, while Moreland had been adjudged a bankrupt, he had not been finally discharged.

■ By his answer as amended the defendant sought to defend upon the grounds that the contractor's guaranty was fraudulently procured by the plaintiff's agent's false representations to the defendant as to the contents and purposes of the contract; that the plaintiff is estopped to enforce the contract of guaranty because the plaintiff's agent falsely represented to the defendant that his liability under the terms of the contract of guaranty would terminate at the end of the fall season of 1951, when in fact such was not the requirement of the contract under its terms; that Moreland's contract required him to sell the plaintiff's products for cash, on promissory notes payable to the plaintiff, and to keep the cash and accounts on such sales entirely separate from any other business which he was conducting; but Moreland had sold the plaintiff's products on open account, taking promissory notes from some sales in his own name, had failed to keep his accounts on such sales separate from his own business, and had commingled cash belonging to the plaintiff with cash from his other business; and that the plaintiff, knowing these facts and not informing the defendant thereof, had increased the defendant's risk.

"Where one who can read signs a contract without apprising himself of its contents, otherwise than by accepting representations made by the opposite party, with whom there exists no fiduciary or confidential relation, he can not defend an action based on it, or have it canceled or reformed, on the ground that it does not contain the contract actually made, unless it should appear that at the time he signed it some such emergency existed as would excuse his failure to read it, or that his failure to read it was brought about by some misleading artifice or device per-

petrated by the opposite party, amounting to actual fraud such as would reasonably prevent him from reading it. *Stoddard Mfg. Co.* v. *Adams,* 122 *Ga.* 802 (50 S. E. 915), and cit.; *Rounsaville* v. *Leonard Mfg. Co.,* 127 *Ga.* 735 (2) (56 S. E. 1030); *Lewis* v. *Foy,* 189 *Ga.* 596, 598 (6 S. E. 2d 788), and cit.; *Tinsley* v. *Gullett Gin Co.,* 21 *Ga. App.* 512 (2), 516 (94 S. E. 892); *Odum* v. *Cotton States Fertilizer Co.,* 38 *Ga. App.* 46 (2) (142 S. E. 470); *Gossett* v. *Wilder,* 46 *Ga. App.* 651 (7), 653 (168 S. E. 903); *Hodge* v. *Milam,* 48 *Ga. App.* 105 (171 S. E. 870)." *Morrison* v. *Roberts,* 195 *Ga.* 45 (23 S. E. 2d 164).

The defendant in his answer does not allege that any confidential or fiduciary relationship existed between him and the plaintiff's agent such as to warrant his reliance upon the agent's representations as to the contents and purposes of the contract of guaranty, saying only that he was occupied with his other business at the time he was induced to sign the contract without reading and apprising himself of the contents and purposes of the contract. No facts are alleged showing actual fraud on the defendant, and he cannot, consequently, under the authority of the cases cited above, defend upon the ground that the contents and purposes of the contract were misrepresented to him.

Had the defendant read his contract before signing it, he would have known that the term of it was to be *"coextensive"* with that of the contract between Moreland and the plaintiff. He also would have known that he guaranteed Moreland's full performance of the requirements of his contract to keep the plaintiff's cash and accounts separate from his other business, and to sell the plaintiff's products only for cash, or on promissory notes, and not on credit. He also would have known that by the terms of the contract of guaranty it waived notice of Moreland's "non-payment and non-fulfillment of any and all of said indebtedness, liabilities, and obligations." These efforts to defend against the contract of guaranty were nothing more than attempts to vary the express terms of the written contract, which he cannot do. The trial court did not err, therefore, in sustaining the plaintiff's demurrers and in striking paragraphs 6, 11, 12, 13, 14, and 16 of the defendant's answer as amended, and the court should, properly, have sustained the demurrer to and stricken paragraph 17 of that answer.

■ Since, properly construed, defendant's contract with the plaintiff is one of guaranty and no action was taken by the trial court to fix it as the law of the case that the contract is one of surety, the action must be construed as having been brought upon a contract of guaranty.

"Ordinarily, a guarantor cannot be sued to judgment on a contract of guaranty in the absence of a prior judgment against the principal and a nulla bona return, unless it is alleged and proved that the principal debtor is insolvent or that he cannot be made to respond to a judgment that may be obtained against him by the plaintiff." *Arkansas Fuel Oil Co.* v. *Young,* 66 *Ga. App.* 33, 35 (16 S. E. 2d 909); *Ferguson* v. *Atlanta Newspapers,* 91 *Ga. App.* 115 (85 S. E. 2d 72).

While it was stipulated upon the trial on February 15, 1955, that Moreland had been adjudged a bankrupt on April 7, 1953, there was no evidence that he had been discharged in the bankruptcy proceedings from liability for the debt here in question, nor was it shown that he was insolvent or could not be made to respond to a judgment in favor of the plaintiff at the time of the trial in this case. The evidence was, consequently, insufficient to authorize a verdict for the plaintiff and the trial court erred in directing a verdict for it. *Ferguson* v. *Atlanta Newspapers,* supra.

■ The other error assigned in the motion for a new trial is such as is not likely to recur upon another trial and is not considered.

*Judgments reversed upon main bill and cross-bill. Gardner, P. J., and Townsend, J., concur.*